O

# United States District Court
# Central District of California

| | |
|---|---|
| MINAS ABKARIAN,<br><br>           Petitioner,<br><br>     v.<br><br>WARDEN et al.,<br><br>           Respondents. | Case № 5:25-cv-03584-ODW (AGRx)<br><br>**ORDER GRANTING UNOPPOSED *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE [9]** |

## I.   INTRODUCTION

Petitioner Minas Abkarian, proceeding pro se, moves the Court *ex parte* for a temporary restraining order requiring his immediate release from custody. (Ex Parte Appl. ("TRO"), Dkt. No. 9.)  Respondents Kristi Noem, Secretary of the Department of Homeland Security ("DHS"); Pamela Bondi, U.S. Attorney General; Director, Immigration and Customs Enforcement ("ICE"); Warden, Adelanto ICE Processing Center; and Director, Los Angeles ICE Field Office failed to timely oppose the request.[1]  For the reasons discussed below, the Court **GRANTS** the TRO.

---

[1] On January 9, 2026, Abkarian served Respondents with the instant application.  (Proofs Service, Dkt. Nos. 11–13.)  The Court's Rules state that it "will not rule on any application [for a temporary restraining order] for at least 24 hours after the party subject to the requested order has been served." Judge's Procedures § VII.D, https://apps.cacd.uscourts.gov/Jps/honorable-otis-d-wright-ii.  During those 24 hours, the party subject to the requested order "may file opposing or responding papers." *Id.*  Thus, Respondents had until January 10, 2026, to respond to the TRO.  They failed to do so.

## II. BACKGROUND[2]

Abkarian is a California resident and has been residing in the United States since at least 2010. (*See* TRO Ex. B ("Order Supervision"), Dkt. No. 9.) Abkarian appears to be a citizen of Lebanon, (TRO Ex. A ("Criminal History Record"), Dkt. No. 9), although the Consulate General of Lebanon in Los Angeles (the "Consulate") does not have documents that can confirm his citizenship, (Decl. Minas Abkarian ISO TRO ("Abkarian Decl.") ¶¶ 4–6, Dkt. No. 10). Abkarian is Chief Operating Officer of Greenhouse Herbal Center. (TRO Ex. D ("Greenhouse Letter"), Dkt. No. 9.) He has a fiancée, Linda Fu, (Abkarian Decl. ¶ 4), with whom he shares a mortgage, (TRO Ex. E ("Deed of Trust"), Dkt. No. 9).

In 2010, Respondents placed Abkarian under an Order of Supervision, (*see* Order Supervision), indicating that Akbarian was subject to a removal order, 8 C.F.R. § 241.5(a). For fifteen years, Abkarian seems to have dutifully appeared at his regularly scheduled report dates. (*Id.*; TRO 1.)

On June 30, 2025, Abkarian was traveling to work when he was taken into ICE custody. (TRO 1.) Respondents did not inform Abkarian of any violation or new charges justifying his detention. (*Id.*) Since June 30, he has remained detained at Adelanto ICE Processing Center. (Abkarian Decl. ¶¶ 2–3, 6.)

After Abkarian's detention, Fu contacted the Consulate to obtain identification or travel documents for Abkarian. (Decl. Linda Fu ISO TRO ("Fu Decl.") ¶ 4, Dkt. No. 10.) On October 20, 2025, the Consulate informed Fu that it had no updates regarding Abkarian. (Fu Decl. Ex. B ("Email Exchange"), Dkt. No. 10.)

As of January 9, 2026, Abkarian has not received any "meaningful custody review or confirmation of removal documents." (TRO 2.)

---

[2] As Abkarian proceeds pro se in this action, the Court "liberally" construes Abkarian's TRO and "make[s] reasonable allowances" for him. *McCabe v. Arave*, 827 F.2d 634, 640 n.6 (9th Cir. 1987).

2

### III. LEGAL STANDARD

A temporary restraining order ("TRO") is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22 (2008). The standard for issuing a TRO is "substantially identical" to that for issuing a preliminary injunction. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). Pursuant to Federal Rule of Civil Procedure ("Rule") 65, a court may grant preliminary injunctive relief to prevent "immediate and irreparable injury." Fed. R. Civ. P. 65(b). To obtain this relief, a plaintiff must establish the "*Winter*" factors: (1) the plaintiff "is likely to succeed on the merits"; (2) the plaintiff "is likely to suffer irreparable harm in the absence of preliminary relief"; (3) "the balance of equities tips in [the plaintiff's] favor"; and (4) "an injunction is in the public interest." *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter*, 555 U.S. at 20).

The Ninth Circuit uses a sliding scale approach to preliminary injunctions, such that "a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Under the sliding scale approach, a plaintiff is entitled to a preliminary injunction if he has raised "serious questions going to the merits . . . and the balance of hardships tips sharply in [his] favor," "so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* at 1135.

### IV. DISCUSSION

Abkarian challenges his continued detention under *Zadvydas v. Davis*, 533 U.S. 678 (2001). (TRO 2.) As an initial matter, the Court has jurisdiction under 28 U.S.C. § 2241(c)(3), which gives district courts the power to grant writs of habeas corpus where a petitioner demonstrates that his custody violates "the Constitution or laws or treaties of the United States." *See Zadvydas*, 533 U.S. at 687 (holding that § 2241 confers jurisdiction on federal courts to hear challenges to continued

immigration-related detention); *see also Nadarajah v. Gonzales*, 443 F.3d 1069, 1075–76 (9th Cir. 2006) (holding that the REAL ID Act of 2005 eliminates federal habeas corpus jurisdiction only over final orders of removal).

Having determined that the Court has jurisdiction over Abkarian's TRO, the Court now turns to the merits of the TRO by discussing the *Winter* factors.

### A.     Serious Questions Going to the Merits

The Court finds that Abkarian raises serious questions going to the merits of his *Zadvydas* claim because he has been detained for over 180 days and has shown good reason that there is no significant likelihood of his removal.

Federal immigration law requires that, once a removal order is final, the government must "remove the alien from the United States within a period of 90 days." 8 U.S.C. § 1231(a)(1)(A). During this initial "removal period," the government "shall detain the alien." *Id.* § 1231(a)(2). However, under § 1231(a)(6), the government may detain aliens for more than ninety days if they have been ordered removed due to criminal convictions.

In *Zadvydas*, the Supreme Court addressed how long an alien may be detained pursuant to § 1231(a)(6). 533 U.S. at 682. First, the Supreme Court held that the government does not have the power to "hold indefinitely in confinement an alien ordered removed." *Id.* at 697. Second, and more pertinent here, the Supreme Court established that a six-month period of detention is "presumptively reasonable." *Id.* at 701. However, after six months, if "the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.*

As a threshold matter, Respondents have continuously detained Abkarian since June 30, 2025, meaning Abkarian has remained in custody for over six months. (TRO 1.) Accordingly, Abkarian's detention is no longer presumptively reasonable, and the Court turns to whether Abkarian shows "good reason to believe that there is

no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701.

Keeping in mind the Supreme Court's admonition to read pro se papers liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), the Court finds that Abkarian raises serious questions about the lawfulness of his detention. Specifically, Abkarian shows good reason to believe that his removal is not significantly likely in the reasonably foreseeable future. *Zadvydas*, 533 U.S. at 701. Courts considering this inquiry have generally focused on whether a petitioner has received, or will receive, travel documents that would make the petitioner's removal possible. *See, e.g.*, *Min v. Santacruz*, No. 2:25-cv-10971-MEMF (ASx), 2025 WL 3295564, at *4 (C.D. Cal. Nov. 26, 2025) (finding that petitioner provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future because "[n]o travel documents have been applied for, let alone secured"). For example, one court found good reason because the petitioner showed that he "lacks valid travel documentation" and "has not received any information indicating that [another county] is likely to issue [him] travel documents in the foreseeable future." *Belach v. Marin*, No. 5:25-cv-03452-SPG (RAOx), 2026 WL 75920, at *4 (C.D Cal. Jan. 5, 2026).

Here, Abkarian is a Lebanese citizen, (Criminal History Record), and Abkarian believes Lebanon is the focus of Respondents' efforts to remove him, (*see* Abkarian Decl. ¶¶ 4–6). However, more than six months have elapsed since Abkarian's detention, and he still has not received the requisite travel documents that would facilitate his removal to Lebanon. (*Id.*; TRO 2.) Instead, it does not appear that the Lebanese Consulate has expressed any intention of issuing travel documents to Abkarian in the immediate future. (*See* Email Exchange.) Rather, Fu's failed attempts to obtain this information from the Consulate suggest that the Lebanese government may be unable or unwilling to provide identification or travel documents that are necessary to facilitate Abkarian's removal. (*See* Fu Decl. ¶ 4.) Finally, as in

*Belach*, Abkarian does not appear to have "received any information [from Respondents] indicating that [another country besides Lebanon] is likely to issue him travel documents in the foreseeable future." 2026 WL 75920, at *4; (TRO 2.)

Considering the delay beyond the "presumptively reasonable" detention period established in *Zadvydas*, the Court finds that Abkarian raises at least serious questions regarding whether there is a "significant likelihood of removal in the reasonably foreseeable future." 555 U.S. at 701; *see Chun Yat Ma v. Asher*, No. C11-1797 MJP, 2012 WL 1432229, at *5 (W.D. Wash. Apr. 25, 2012) ("An undue delay in removal for an individual alien beyond the typical removal period would naturally suggest that removal is unlikely."). As Abkarian meets his initial burden, the burden shifts to Respondents to show that removal is significantly likely. *Zadvydas*, 555 U.S. at 701. However, Respondents failed to respond to the TRO. As such, Respondents failed to rebut Abkarian's showing that there are serious questions regarding whether his removal is not significantly likely in the reasonably foreseeable future. Therefore, the first *Winter* factor weighs in favor of injunctive relief.

**B.     Likelihood of Irreparable Harm**

Abkarian contends that he will suffer irreparable harm from his continued detention. (TRO 2.) Without reaching any potential deprivation of constitutional rights or the corresponding harms, the Court agrees and finds that Abkarian's continued detention results in irreparable harm. The Ninth Circuit has recognized "the irreparable harms imposed on anyone subject to immigration detention," including "economic burdens imposed on detainees and their families as a result of detention." *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017). Here, Abkarian's continued detention deprives him of economic income from his job as Chief Operating Officer. (*See* Greenhouse Letter.) The lack of income presumably also affects Abkarian's ability to pay for the mortgage he shares with Fu. (*See* Deed of Trust.) The financial impacts alone cannot be overstated, to say nothing of the "mental and physical" harm that Abkarian faces every day he remains unlawfully in Respondents' custody.

(TRO 2.) As Respondents fail to rebut this showing, the Court finds that Abkarian has demonstrated that his continued detention is likely to result in irreparable harm, and this factor weighs strongly in favor of injunctive relief.

## C. Balance of Equities and Public Interest

The last two *Winter* factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). Here, the balance of equities tips sharply in Abkarian's favor as he would suffer great hardship if the Court were to deny the TRO. *See Cottrell*, 632 F.3d at 1134–35 (requiring the balance of hardships to "tip sharply" in the moving party's favor). Specifically, Abkarian would continue to suffer over six months of detention without removal. Moreover, there is nothing equitable or just about detaining individuals who do not face a significant likelihood of removal in the reasonably foreseeable future. Given "[Abkarian's] unlawful detention, and without any reason to believe [his] removal or release will occur in the reasonably foreseeable future, the Court finds ample reason to conclude that 'the balance of hardships tips decidedly in [Abkarian's] favor.'" *See Min*, 2025 WL 3295564, at *6. Thus, the last two *Winter* factors also weigh in favor of an injunction.

In sum, the Court finds that Abkarian has demonstrated "serious questions going to the merits." Abkarian has also shown that the "balance of hardships tips sharply in [his] favor," and that there "is a likelihood of irreparable injury and that the injunction is in the public interest." *See Cottrell*, 632 F.3d at 1135. Thus, under the Ninth Circuit's sliding scale approach, the Court finds that Abkarian is entitled to a temporary restraining order. *Id.* at 1131.

## V. CONCLUSION

For the reasons discussed above, the Court **GRANTS** the TRO. (Dkt. No. 9.) It is hereby **ORDERED** that:

- Respondents shall **IMMEDIATELY RELEASE** Abkarian from their custody and file a notice with the Court as soon as he is released;

- Respondents are **ENJOINED** from redetaining Abkarian unless they have obtained travel documents for his removal, making his removal significantly likely in the reasonably foreseeable future;
- Respondents are **ENJOINED** from relocating Abkarian outside of the Central District of California pending final resolution of this case; and
- Respondents shall **SHOW CAUSE**, in writing only, to be received by the Court no later than **JANUARY 19, 2026**, as to why the Court should not issue a preliminary injunction in this case.  Abkarian may file a reply by **JANUARY 23, 2026**.  The Court **SETS** a hearing on the preliminary injunction on **JANUARY 28, 2026, at 1:30 a.m.**, via Zoom.

**IT IS SO ORDERED.**

January 12, 2026

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**